IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| JOSEPH PHILLIP HARRIS,<br><br>        Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A., TIEN PHONG COMMERCIAL JOINT STOCK BANK, VIETNAM TECHNOLOGICAL AND COMMERCIAL, and TRELLIAN PTY. LIMITED,<br><br>        Defendants. | No. 4:25-cv-00027-RGE-SBJ<br><br>ORDER GRANTING DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS |

## I.    INTRODUCTION

Plaintiff Joseph Phillips Harris brings this action against Defendants Wells Fargo Bank, N.A., Tien Phong Commercial Joint Stock Bank, Vietnam Technological and Commercial, and Trellian Pty. Limited.[1] His complaint asserts claims of fraud, conversion, negligence, breach of contract, and unjust enrichment arising from a cryptocurrency fraud scam.

Wells Fargo moves to dismiss each of the claims asserted against it, arguing Harris has failed to state claims upon which relief may be granted. Harris resists in part. For the reasons set forth below, the Court grants Wells Fargo's motion to dismiss.

## II.    BACKGROUND

### A.    Factual Background

The Court accepts the following facts as true for the purpose of analyzing the motion to

---

[1] Harris also filed suit against Defendants Tu Chuong Niem and Hang Seng Bank Ltd. Compl. 1, ECF No. 1. These two Defendants have been dismissed. Stipulation and Order Dismissing Def. Hang Seng Bank, ECF No. 21; Notice of Voluntary Dismissal, ECF No. 23.

dismiss. *See Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010). The Court also considers Wells Fargo's Deposit Account Agreement which is incorporated by reference in the complaint, attached as exhibits, and whose authenticity is unquestioned. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)); Pl.'s Ex. 3 Supp. Compl., ECF No. 1-3; Def.'s Br. Supp. Mot. Dismiss, ECF No. 17-1.

Wells Fargo is a bank providing retail banking services to consumers in Iowa. ECF No. 1 ¶ 8. Harris is a Wells Fargo customer. *Id.* ¶ 38. Harris's use of his account is governed by Wells Fargo's Deposit Account Agreement ("the Contract"). *Id.* (citing ECF No. 1-3). In the summer of 2023, fraudsters contacted Harris pretending to represent an overseas investment partnership. *Id.* ¶ 35. These fraudsters induced Harris to execute eight wire transfers totaling $516,500. *Id.* ¶¶ 41–42, 45–50. After Harris discovered the fraud, Wells Fargo attempted to retrieve the funds Harris wired but was unsuccessful. *Id.* ¶ 57.

Additional facts are set forth below as needed.

### B.    Procedural Background

Harris filed a six-count complaint against Defendants, alleging claims of fraud against now-dismissed Niem (Count I), aiding and abetting fraud against Tien Phong Bank, Vietnam Technological and Commercial, Trellian, and now-dismissed Hang Seng Bank (Count II), conversion/aiding and abetting conversion against Tien Phong Bank, Vietnam Technological and Commercial, Trellian, and now-dismissed Hang Seng Bank (Count III), negligence against Tien Phong Bank, Vietnam Technological and Commercial, and now-dismissed Hang Seng Bank (Count IV), breach of contract against Wells Fargo (Count V), and unjust enrichment against all Defendants (Count VI). *Id.* ¶¶ 60–118. Harris's complaint seeks punitive damages. *Id.* ¶ 119.

Wells Fargo moves to dismiss all claims asserted against it. Def. Wells Fargo's Mot.

Dismiss, ECF No. 17. Harris resists in part, arguing the counts asserted against Wells Fargo state claims upon which relief may be granted and concedes he cannot seek punitive damages against Wells Fargo. Pl.'s Resist. Def. Wells Fargo's Mot. Dismiss, ECF No. 18. The parties did not request oral argument and the Court declines to order it, finding the parties' briefing adequately presents the issues. *See* Fed. R. Civ. P. 78(b); LR 7(c). Having considered the parties' briefing and applicable law, the Court grants Wells Fargo's motion to dismiss.

## III.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian*, 760 F.3d at 848 (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). The Court must accept as true all factual allegations in the complaint, but not its legal conclusions. *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 555–56).

A plausible claim for relief "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). A plaintiff must "nudge[ ] their claims across the line from conceivable to plausible, [else] their complaint must be dismissed." *Twombly*, 550 U.S. at 570. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

3

In ruling on a Rule 12(b)(6) motion to dismiss, a court's review is limited to the complaint, "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." *United States ex rel. Ambrosecchia v. Paddock Lab'ys, LLC*, 855 F.3d 949, 954 (8th Cir. 2017) (alteration in original) (internal quotation marks and citation omitted). Matters "outside the pleading" are not considered, including "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992) (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366); *see also Summers Mfg. Co., Inc. v. Tri-Cnty. AG, LLC*, 300 F. Supp. 3d 1025, 1035 (S.D. Iowa 2017) (collecting cases).

## IV.    DISCUSSION

Wells Fargo moves to dismiss Harris's claims of breach of contract and unjust enrichment for failure to state a claim on which relief can be granted. ECF No. 17. As to Harris's breach of contract claim, Wells Fargo argues the claim fails because "nowhere does the Complaint identify a single term in the Deposit Account Agreement that Wells Fargo breached, Plaintiff's performance, or any damages caused by Wells Fargo." ECF No. 17-1 at 4. As to Harris's unjust enrichment claim, Wells Fargo argues the claim fails because "[Wells Fargo] did not receive any benefit at the expense of Plaintiff." *Id.* at 7. Harris resists. ECF No. 18. Upon review of the parties' filings, the Court concludes Harris fails to sufficiently plead his claims and grants Wells Fargo's motion to dismiss.

### A.    Breach of Contract

In order to show breach of contract, a plaintiff must prove 1) the existence of a contract; 2) the terms and conditions of the contract; 3) performance of those terms and conditions; 4) breach of the contract; and 5) damages from the breach of the contract. *Meardon v. Register*,

994 F.3d 927, 935 (8th Cir. 2021) (citing *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998)).

Contract construction, the decision of the legal effect of a contract, begins with interpretation of the contract—"ascertaining the meaning of contractual words." *Americredit Fin. Servs., Inc. v. Adams Motor Co.*, No. C18-4067-LTS, 2019 WL 3938473, at *6 (N.D. Iowa Aug. 20, 2019) (quoting *Fashion Fabrics of Iowa, Inc. v. Retail Invs. Corp.*, 266 N.W.2d 22, 25 (Iowa 1978)). *But see United States v. Keitel*, 211 U.S. 370, 386 (1908) (stating "construction," as commonly used, includes both construction and interpretation). Under Iowa law, construction is always a matter of law. *Fashion Fabrics*, 266 N.W.2d at 25. Interpretation is also treated as a legal issue, "unless it depend[s] at the trial level on extrinsic evidence." *Id.* Even when extrinsic evidence is offered, however, interpretation is treated as a matter of law unless "the evidence is disputed or if different conclusions may be drawn from the evidence." *Rector v. Alcorn*, 241 N.W.2d 196, 202 (Iowa 1976).

The "cardinal principle" of contract construction is that the intent of the parties controls, and if the intent of the parties can be derived from "the words of the contract itself," then the Court will "enforce the contract as written." *DuTrac Cmty. Credit Union v. Radiology Grp. Real Est. L.C.*, 891 N.W.2d 210, 216 (Iowa 2017) (citations omitted). Under Iowa law, interpretation and construction are generally conducted without reliance on extrinsic evidence. *Id.* Accordingly, if the contract terms are unambiguous, the meaning of the provisions of the contract is determined "based on the language within the four corners of the document." *Clinton Physical Therapy Servs., P.C. v. John Deere Health Care, Inc.*, 714 N.W.2d 603, 615 (Iowa 2006). If, on the other hand, "the contract is ambiguous and uncertain" extrinsic evidence may be considered "to help determine the intent." *Hartig Drug Co. v. Hartig*, 602 N.W.2d 794, 797 (Iowa 1999). A contract is not ambiguous "merely because the parties disagree over its meaning." *Id.* Rather, the test for

ambiguity in a contract is an objective test that asks whether the language in the contract is "fairly susceptible to two interpretations." *Oberbillig v. West Grand Towers Condo. Ass'n*, 807 N.W.2d 143, 150–51 (Iowa 2011) (quoting *Nationwide Agri-Bus. Ins. Co. v. Goodwin*, 782 N.W.2d 465, 470 (Iowa 2010)). "Ambiguity is not present merely because the provision could have been worded more clearly or precisely than it in fact was." *Cairns v. Grinnell Mut. Reins. Co.*, 398 N.W.2d 821, 824 (Iowa 1987) (internal quotation marks and citation omitted).

Wells Fargo asserts Harris has failed to adequately allege each element of his breach of contract claim. ECF No. 17-1 at 4. Wells Fargo claims it owed no duty to investigate, intervene, and stop a wire transfer properly requested by Harris and therefore did not break any term of the Contract by complying with his wire transfer request. *Id.* In addition, Wells Fargo asserts Harris has failed to show any damages caused by Wells Fargo, asserting all damages are the result of the acts of third-party fraudsters. *Id.* Harris resists, arguing the Contract included a term requiring Wells Fargo to act to stop Harris from carrying out the wire transfer given his elderly age, and its failure to act is therefore a breach of the terms of the Contract. ECF No. 18 at 5–6. Specifically, Harris argues the Contract provision found in the section titled "[r]esponsibilities and liabilities between Wells Fargo and you" requiring Wells Fargo to "'exercis[e] ordinary care and comply[] with' the Deposit Account Agreement" should be interpreted as requiring "Wells Fargo to track, identify, and investigate suspicious transactions by elderly customers and to intervene when that investigation yields evidence of financial exploitation or abuse." ECF No. 1-3 at 43; ECF No. 18 at 5. Harris emphasizes his claim does not arise under any implied duty of care under the UCC, but on the explicit language of the Contract itself. *See* ECF No. 18 at 7.

The dispositive question is therefore whether the terms of the Contract require Wells Fargo to actively investigate a customer's properly requested wire transfer before complying with the wire transfer request. The Court applies Iowa canons of contract construction to answer this

question. Because the Court finds no such duty existed under the terms of the Contract, Wells Fargo's motion to dismiss is granted.

The terms of the Contract are clear and unambiguous—Wells Fargo has no duty to proactively verify the substance and purpose of a wire transfer request prior to complying with the customer request. The words of the Contract itself illustrate the parties had no intent to impose such a duty. The Contract language indicates Wells Fargo relied on customers providing accurate information in their wire transfer requests and had no duty to independently perform any preventative investigation or verification of customer wire transfer requests. ECF No. 1-3 at 20. Because the language contained in the four corners of the document is unambiguous, the Court may not reach for any extrinsic evidence to construe the terms of the Contract. The Court's discussion is therefore limited to the language contained within the Contract itself. Harris asserts the language "[Wells Fargo is] responsible for exercising ordinary care" should be interpreted as creating a duty to investigate and intervene in customer wire transfer requests. *Id.* at 43. However, the plain language of the Contract demonstrates no such duty exists.

Interpreting the "ordinary care" language as imposing a proactive duty to investigate customer wire transfers would conflict with several other terms in the Contract. Such an interpretation therefore cannot be correct. Immediately following the statement Harris asserts as the basis for his interpretation, the Contract states "[w]hen we take an item for processing by automated means, ordinary care does not require us to examine the item." *Id.* Then stating "[i]n all other cases, ordinary care requires only that we follow standards that don't vary unreasonably from the general standards followed by similarly situated banks." *Id.* Critically this section includes the sentence "[w]e won't be liable for anything we do when following your instructions." *Id.* Therefore taken together, the terms of the Contract impose liability on Wells Fargo if it fails to act with ordinary care and Wells Fargo will not be liable for any actions taken in compliance

7

with customer instructions. Complying with a customer's instructions necessarily cannot fall below the standard of ordinary care as used in the Contract. Because the plain language of this section clearly and unambiguously precludes liability for following customer instructions, carrying out the transfer requests cannot constitute a breach of contract.

Other sections of the Contract similarly require an interpretation finding Wells Fargo's compliance with a customer request cannot constitute a breach of contract. The section of the Contract governing wire transfers is titled "Fund Transfer Disclosures." *Id.* at 20. Under the subsection titled "[e]rroneous payment orders," Wells Fargo warns customers "[y]ou could lose funds if you provide incomplete or inaccurate information in your payment orders." *Id.* The Contract further states "[w]e have no obligation to detect errors you make in payment orders (for example, paying the wrong person or the wrong amount)." *Id.* In the subsection titled "[y]our duty to report unauthorized or erroneous funds transfers," the Contract states "[y]ou'll exercise ordinary care to determine whether a funds transfer to or from your account was either not authorized or erroneous." ECF No. 1-3 at 20. This term uses identical "ordinary care" language as the term Harris bases his claim on. In this section, however, the duty is on the customer to exercise ordinary care in discovering erroneous wire transfers.

This language is indicative of the intent of the parties in defining how wire transfer requests would function. The Contract contemplates Wells Fargo will rely on customers providing accurate information in their wire transfer requests, monitoring their account activity, and timely reporting any issues customers detect to Wells Fargo. Wells Fargo, meanwhile, is tasked with following those customer requests accurately. Finding Wells Fargo had a duty to investigate the intent and purpose of customer wire transfers before complying with the customer request would be in direct conflict with the clear and unambiguous language of the Contract governing wire transfer requests.

Harris asserts Wells Fargo had a duty to "help identify and prevent financial elder abuse

8

fraud" which should be understood as a separate and distinct duty apart from detecting errors in "the sequence of numbers of a bank account given." ECF No. 18 at 7. However, no such duty to identify and prevent elder abuse is imposed on Wells Fargo in any term of the Contract and all language in the Contract indicates it was not the intent of the parties for such a duty to exist. In the absence of any provision in the Contract imposing such a duty or any language indicating it was the intent for the parties to create such a duty, the Court cannot impose a duty on Wells Fargo and must enforce the Contract as written. *Cf. Howard v. Schildberg Constr. Co.*, 528 N.W.2d 550, 555 (Iowa 1995) (emphasizing that when the language of a contract is clear and unambiguous, the court will enforce the contract as written).

It is undisputed that Harris requested the wire transfers at issue and that Wells Fargo accurately carried out the wire transfer requests. ECF No. 1 ¶ 101. The terms of the Contract impose no duty on Wells Fargo to investigate the wire transfer requests of its customers, and indeed specifically exempt Wells Fargo from liability when acting upon the instructions of a customer. Because no duty existed, Wells Fargo cannot have breached the terms of the Contract by failing to perform this duty. Therefore, Harris has failed to adequately allege all the required elements of a breach of contract claim. Specifically, Harris has failed to show Wells Fargo was required to perform under the terms of the Contract and breached the Contract by failing to perform. The Court need not reach the issue of damages. The motion to dismiss is granted.

### B.    Unjust Enrichment

"A claim for unjust enrichment 'arises from the equitable principle that one shall not be permitted to unjustly enrich oneself by receiving property or benefits without making compensation therefor.'" *Legg v. W. Bank*, 873 N.W.2d 763, 771 (Iowa 2016) (quoting *Ahrendsen ex rel. Ahrendsen v. Iowa Dep't of Hum. Servs.*, 613 N.W.2d 674, 679 (Iowa 2000)). "The doctrine[ ] of unjust enrichment . . . [is] based upon the concept of implied contract." *Kunde v.*

*Est. of Bowman*, 920 N.W.2d 803, 807 (Iowa 2018), *as amended on denial of reh'g* (Jan. 4, 2019). Under Iowa law, "[a]n express contract and an implied contract cannot coexist with respect to the same subject matter." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Legg*, 873 N.W.2d at 771).

Harris's claim for unjust enrichment cannot stand where a contract exists between the parties. There is, as discussed above, a valid contract between the parties. Because the Court finds dismissal of Claim VI is warranted on this ground, it need not consider the parties' arguments regarding the merits of Harris's unjust enrichment claim.

### C.    Punitive Damages

The parties agree Harris's request for punitive damages against Wells Fargo must be dismissed. ECF No. 17-1 at 7–8; ECF No. 18 at 8.

## V.    CONCLUSION

For the forgoing reasons,

**IT IS ORDERED** that Defendant Wells Fargo Bank N.A.'s Motion to Dismiss, ECF No. 17, is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 25th day of September, 2025.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE